UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NC HOLDINGS,

      Plaintiff,

      v.                                        Case No. 06-C-1085

UNITED REHABILITATION SERVICES, INC.,
EXTENDICARE HEALTH SERVICES, INC., and
EXTENDICARE HEALTH FACILITIES, INC.

      Defendants.

**DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS**

**I.  BACKGROUND**

This action was commenced on October 17, 2006, when the plaintiff, NC Holdings, Inc. ("NC Holdings"), filed a complaint in the Eastern District of Wisconsin naming United Rehabilitation Services, Inc. ("URS"), Extendicare Health Services, Inc. ("EHSI"), and Extendicare Health Facilities, Inc. ("EHFI") as defendants. NC Holdings asserts three claims against the defendants: (1) breach of contract, (2) unjust enrichment, and (3) misrepresentation. On November 20, 2006, the defendants filed a motion to dismiss this action pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), or, in the alternative, for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). On December 28, 2006, the plaintiff filed its response to the motion to dismiss. On January 11, 2007, the defendants filed their reply. Such being the case, the defendants' motion to dismiss is now fully briefed and is ready for resolution. For the following reasons, the defendants' motion to dismiss will be granted in part and denied in part.

The following factual allegations are taken directly from the plaintiff's complaint and are accepted as true for the purpose of this motion to dismiss. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002).

NC Holdings is the successor-in-interest to NovaCare, Inc. ("NovaCare"), a corporation that provided speech, occupational, and physical therapy services to nursing care facilities nationwide. (Compl. ¶ 2.) NC Holdings, as successor-in-interest to NovaCare, has the right to be paid on past due accounts receivable for therapy services rendered by NovaCare through December 31, 1995. (Compl. ¶ 2.)

Upon information and belief, United Rehabilitation Services ("URS") is a wholly owned subsidiary of Extendicare Health Facility Holding, Inc. ("EHFI"), which is a wholly owned subsidiary of Extendicare Health Services Holding, Inc. ("EHSI"). Upon information and belief, URS is the successor-in-interest to Unicare Ancillary Services Division ("UASD"), but URS is no longer operating. (Compl. ¶ 3.) Upon information and belief, EHFI is the successor-in-interest to Unicare Health Facilities, Inc. ("Unicare"). (Compl. ¶ 4.) Upon information and belief, EHFI is affiliated with EHSI. (Compl. ¶ 5.)

In the plaintiff's complaint, UASD, Unicare, EHSI, EHFI, and URS are collectively referred to as the "Extendicare defendants." The Extendicare defendants were in the business of providing therapy services to patients at various nursing care facilities. (Compl. ¶ 6.)

In or about January of 1994, NovaCare, UASD, and Unicare entered into a Preferred Provider Agreement whereby NovaCare would be the preferred provider of therapy services to residents of the facilities owned and managed by Unicare. (Compl., Ex. A at 1.) UASD was Unicare's agent in

arranging for and managing the provision of rehabilitation services in Unicare's nursing facilities. (Compl., Ex. A at 1.)

Under Section VI of the Preferred Provider Agreement, NovaCare was to submit to UASD invoices for therapy services that NovaCare had provided to the residents at Unicare's facilities and UASD was to remit payment to NovaCare within forty-five (45) days of the invoice date. (Compl. ¶ 11.)

Pursuant to the Preferred Provider Agreement, UASD was to facilitate billing and reimbursement from third-party payers, including any federal or state payer. (Compl. ¶ 12.) Section VI.C.1 of the Preferred Provider Agreement states in pertinent part:

> NovaCare agrees that to the extent any charges or payment made to NovaCare by [UASD] pursuant to this Agreement are disallowed, reclassified or rejected by any third party payer, including but not limited to any federal or state payer . . . then NovaCare shall repay all such charges or payments to [UASD].

(Compl. ¶ 13.)

Section VI.C.2. of the Preferred Provider Agreement states:

> In the event a third party payer notifies any facility or [UASD] that reimbursement for NovaCare's fees for [therapy services rendered pursuant to this agreement] is denied or disallowed, [UASD] shall either (a) notify NovaCare within one hundred eighty (180) days of receipt of the [Notice of Program Reimbursement ("NPR")] or other such notice or (b) request a hearing before the appropriate review board. In the event that neither [the facility] nor [UASD] shall pursue an appeal of the NPR or other such notice within 180 days of receipt of NPR, then NovaCare shall be subrogated to such right of appeal of the NPR or other such notice on behalf of [the facility] and [UASD].

(Compl. ¶ 14.)

Section VI.C.3 of the Preferred Provider Agreement states:

> NovaCare shall have the right upon notice at NovaCare's sole expense to contest any proposed or actual disallowance or adjustment in its own name or in the name of [the

3

> facility] or [UASD] by accountants and/or counsel reasonably satisfactory to [UASD]. In connection with any such contest, [UASD] shall cooperate fully with NovaCare, and it will provide full access to any of its relevant books and records. [UASD] shall pay to NovaCare any monies recovered from third party payers for which payment has been made by NovaCare pursuant to paragraph VI.C.1 within thirty (30) days receipt of funds from the third party payer.

(Compl. ¶ 15.)

NovaCare provided therapy services to residents at Unicare's facilities and received payments from UASD and Unicare for such therapy services during the cost-reporting period ending December 31, 1995. (Compl. ¶ 17.) Upon information and belief, one or more of the Extendicare defendants sought reimbursement from Medicare for the therapy services rendered by NovaCare at Unicare's facilities for the reporting period ending on December 31, 1995. (Compl. ¶ 18.)

In or about 1997, one or more of the Extendicare defendants notified Novacare that Medicare disallowed reimbursement for certain therapy services rendered by NovaCare to residents at Unicare's facilities during the reporting period ending on December 31, 1995. (Compl. ¶ 19.)

In or about 1997, and pursuant to the Preferred Provider Agreement, NovaCare retained legal representation at its expense and, as required by law, prosecuted litigation in the names of various skilled nursing facilities of URS against United Government Services, Inc. ("UGS") in order to review Medicare's decision disallowing reimbursement for certain therapy services provided by Novacare to residents at URS's facilities ("Prudent Buyer Actions").[1] (Compl. ¶ 20.)

---

[1] In paragraph twenty (20) of the complaint, the plaintiff refers to "the facilities of URS." However, the plaintiff alleged that URS was the successor-in-interest to UASD, and pursuant to the Preferred Provider Agreement, UASD did not own the facilities. Rather, UASD acted as Unicare's agent in arranging for and managing the provision of rehabilitation services in Unicare's facilities. (Compl., Ex. A at 1.) According to the Preferred Provider Agreement, Unicare owned and managed the nursing facilities. (Compl., Ex. A at 1.) Thus, presumably, the plaintiff is referring to *Unicare*'s facilities in this paragraph, or EHFI's facilities (as EHFI is, upon information and belief, the successor-in-interest to Unicare). (Compl. ¶ 4.)

On or about January 26, 1998, URS sought repayment of $897,907.00 from NovaCare based upon the Medicare disallowances. (Compl. ¶ 21.) Presumably, when URS sought repayment, it was acting as successor-in-interest to UASD.

Throughout the pendency of the Prudent Buyer Actions, NovaCare paid all legal fees and costs. (Compl. ¶ 22.) Without NovaCare's knowledge or consent, EHSI entered into an Agreement of Settlement and Release (referred to herein as the "Extendicare Settlement Agreement") intended to resolve numerous appeals filed by one or more of the Extendicare defendants, including the Prudent Buyer Actions. (Compl. ¶ 23.)

Based upon the Extendicare Settlement Agreement, UGS issued a revised Notice of Program Reimbursements and, on January 28, 2000, issued payment to EHSI totaling $10,882,852.00. (Compl. ¶ 24.) In exchange for the payment received, EHSI withdrew the Prudent Buyer actions without NovaCare's knowledge or consent, as well as other appeals. (Compl. ¶ 25.)

At NovaCare's request, one or more of the Extendicare Defendants re-filed the Prudent Buyer Actions. However, in May of 2006, and without NovaCare's knowledge and consent, EHSI again facilitated the withdrawal of the Prudent Buyer Actions based upon the Extendicare Settlement Agreement. (Compl. ¶ 26.)

None of the Extendicare defendants has ever reimbursed NovaCare or NC Holdings for the set off by URS of the Medicare disallowances. (Compl. ¶ 27.)

## II. LEGAL STANDARDS

"In evaluating whether a plaintiff's complaint fails to state a claim, a court must take the plaintiff's factual allegations as true and draw all reasonable inferences in his favor." *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) (internal quotations omitted). "Dismissal is proper under Rule

5

12(b)(6) only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Indeed, if it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Brown*, 398 F.3d at 909 (internal quotations omitted).

"Whether a complaint sufficiently states a claim turns on whether it meets the general rules of pleading a claim for relief. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain 'a short and plain statement of the claim showing the pleader is entitled to relief.' This 'short and plain statement' requires a plaintiff to allege no more than the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Id.* at 908. (internal quotations omitted). However, Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

### III. DISCUSSION

In support of their motion to dismiss, the defendants raise the following arguments: (1) all claims against URS should be dismissed because URS has been dissolved and thus, the applicable statute of limitations has expired; (2) all claims against EHSI should be dismissed because it was not a party to the Preferred Provider Agreement at issue in this action; (3) the unjust enrichment claim against EHFI should be dismissed because of the existence of a contract; and (4) the misrepresentation claim against EHFI should be dismissed because the plaintiff failed to plead with

6

Case 2:06-cv-01085-WEC   Filed 02/16/07   Page 6 of 17   Document 24

particularity, in violation of Federal Rule of Civil Procedure 9(b). The court will address each argument in turn.

*A. Claims against URS*

The defendants argue that all claims against URS, that is, UASD's alleged successor-in-interest, should be dismissed because URS has been dissolved. Specifically, the defendants ask the court to take judicial notice of the fact that URS was dissolved on December 31, 2000, and argue that "because the plaintiff did not bring suit within two years after URS's dissolution, the claims are barred under Wis. Stat. § 180.1407." (Defs.'s Br. at 2-3.) In response, the plaintiff argues that even if the court were to take judicial notice of the claimed date of URS's dissolution, URS's dissolution does not, in and of itself, impose a two-year statute of limitations on the plaintiff's claims pursuant to Wis. Stat. § 180.1407. (Pl.'s Br. at 11.)

Simply stated, the defendants' argument is that the plaintiff's claims against URS are barred by the applicable statute of limitations, that is, Wis. Stat. § 180.1407. A statute of limitations defense, however, is an affirmative defense pursuant to Federal Rule of Civil Procedure 8(c). And, as the Seventh Circuit has stated, "it is incorrect to grant a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense." *McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006). This is because a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Indeed, the Seventh Circuit has deemed it "irregular" to dismiss a claim as untimely under Rule 12(b)(6). *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate *only* where the plaintiff pleads himself out of court by "admit[ting] all the ingredients of an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899,

7

901 (7th Cir. 2004) (emphasis added); *see also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (explaining that dismissal is proper where the complaint "plainly reveals that an action is untimely under the governing statute of limitations"). And, in such cases, the validity of the defense must be "apparent from the complaint itself" and "unmistakable." *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002).

Here, the plaintiff did not plead itself out of court by "admit[ting] all the ingredients of an impenetrable defense." *Xechem, Inc.*, 372 F.3d at 901. Furthermore, even if the court were to take judicial notice of the claimed date of URS's dissolution, it does not follow that the complaint "plainly reveals that [this] action is untimely under the governing statute of limitations." *Lewis*, 411 F.3d at 842. This is because Wis. Stat. § 108.1407(2) provides, in pertinent part, that "if the dissolved corporation publishes a newspaper notice in accordance with sub. (1), a claim against the dissolved corporation or its directors, officers or shareholders is barred unless the claimant brings a proceeding to enforce the claim within 2 years after the publication date of the newspaper notice." Wis. Stat. § 180.1407. And, it is unclear whether URS published a newspaper notice in accordance with Wis. Stat. § 108.1407(1). Consequently, and for all of the foregoing reasons, the plaintiff's breach of contract and unjust enrichment claims against URS will not be dismissed pursuant to Rule 12(b)(6).

*B. Breach of Contract and Unjust Enrichment Claims against EHSI*

The defendants argue that because EHSI was not a party to the Preferred Provider Agreement, and the plaintiff has not alleged any facts upon which EHSI could be viewed as obligated under the Preferred Provider Agreement, the plaintiff's breach of contract claim against EHSI must be dismissed. The defendants further argue that because no benefit was conferred on EHSI by either

8

NovaCare or NC Holdings, the plaintiff's unjust enrichment claim against EHSI should be dismissed. To be sure, the Preferred Provider Agreement, attached as Exhibit A to the complaint, lists only Unicare (EHFI), UASD (URS), and NovaCare (NC Holdings) as parties. EHSI is not mentioned in the Preferred Provider Agreement. Furthermore, I agree with the defendants that NC Holdings has not alleged that it or NovaCare ever conferred any benefit directly upon EHSI. Rather, NC Holdings alleges that it conferred a benefit, that is, therapy services, upon Unicare (EHFI), and UASD (URS). In my view, based upon the allegations set forth in its complaint, it appears as though NC Holdings is seeking to hold EHSI liable for the actions of its subsidiary EHFI.

"A basic tenet of corporate law is that subsidiaries and parent corporations are designed to be legally separate from one another." *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1130-31 (W.D. Wis. 2004). The parent company is shielded from liability for a subsidiary's actions through a "corporate veil." *Id.* at 1131. Nonetheless, the "corporate veil should be pierced when the subsidiary corporation is 'organized, controlled and conducted' so that it is the 'instrumentality' of its shareholder and where the corporate form is used 'to evade an obligation, to gain an unjust advantage or to commit an injustice.'" *City of Waukesha v. Viacom Int'l Inc.*, 404 F. Supp. 2d 1112, 1119 (E.D. Wis. 2005) (quoting *Consumer's Co-op. of Walworth County v. Olsen*, 142 Wis. 2d 465, 419 N.W.2d 211, 214 (1988)).

In its complaint, NC Holdings alleges that (1) EHFI is a wholly owned subsidiary of EHSI; (2) EHSI and EHFI share a place of business at 111 West Michigan Street, Milwaukee, Wisconsin; (3) the Prudent Buyer Actions were prosecuted in the names of Unicare's (EHFI's) skilled nursing facilities against UGS in order to review Medicare's disallowances for therapy services rendered by NovaCare at Unicare's (EHFI's) facilities; (4) EHSI entered into the Extendicare Settlement

9

Agreement with UGS, and such agreement settled, among other appeals, the Prudent Buyer Actions; and (5) NovaCare re-filed the Prudent Buyer Actions, and EHSI facilitated the withdrawal of the Prudent Buyer Actions based upon the Extendicare Settlement Agreement. (Compl. ¶¶ 3-5, 20, 23, 26.)

To be sure, the allegations set forth in support of NC Holdings' breach of contract and unjust enrichment claims against EHSI are thin. That said, the Federal Rules of Civil Procedure provide for a system of notice pleading, requiring only that the complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint need not contain all of the facts that will be necessary to prevail at trial. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). While it is somewhat of a close call, taking NC Holdings's allegations as true and drawing all reasonable inferences in its favor, I am persuaded that dismissal of its breach of contract and unjust enrichment claims against EHSI would be improper at this stage of the proceeding. This is because I cannot say that "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim[s] which would entitle [it] to relief. *Centers*, 398 F.3d at 933 (internal quotations omitted). "Indeed, it is possible to hypothesize a set of facts, consistent with [NC Holdings's] complaint, that would entitle [it] to relief" against EHSI for breach of contract or, alternatively, unjust enrichment. *Brown*, 398 F.3d at 909 (internal quotations omitted); *see also infra* Part III.C (rejecting the defendants' argument that an unjust enrichment claim cannot be plead in the alternative to a breach of contract claim when it is alleged that a contract exists between the parties).

At the very least, NC Holdings's allegations illustrate a link between EHFI and EHSI, from which it is reasonable to infer that the parent corporation, EHSI, may exert some control over its

subsidiary, EHFI. *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 799 (W.D. Wis. 2006). Indeed, although the court is not particularly familiar with litigation regarding the appeal of Medicare disallowances against UGS, typically only a party to an action may waive its rights pursuant to that action. And, according to the allegations set forth in NC Holdings's complaint, it was EHSI, not EHFI, that entered into the Extendicare Settlement Agreement, thereby waiving EHFI's (Unicare's) rights pursuant to the Prudent Buyer Actions. Simply put, I am persuaded that the plaintiff should be afforded an opportunity to determine the extent of EHSI's control over EHFI through discovery. *See Uebelacker*, 464 F. Supp. 2d at 799. Such being the case, the plaintiff's breach of contract and unjust enrichment claims against EHSI will not be dismissed.

*C. Unjust Enrichment Claim against EHFI*

The defendants argue that the unjust enrichment claim against EHFI should be dismissed in the face of the contract between NC Holdings, that is, as NovaCare's successor-in-interest, and EHFI, that is, Unicare's successor-in-interest. More precisely, the defendants argue that because there is no question as to the existence or enforceability of the contract, the rules of alternative pleading do not allow NC Holdings to plead both a breach of contract claim and an unjust enrichment claim. (Defs.' Reply Br. at 5.) The plaintiff argues that it has properly plead its breach of contract and unjust enrichment claims in the alternative pursuant to Rule 8 of the Federal Rules of Civil Procedure.

A plaintiff is permitted to plead in the alternative. *See* Fed. R. Civ. P. 8(e)(2) (stating that "a party may set forth two or more statements of a claim or defense alternately or hypothetically" and that a party may state "as many separate claims or defenses as the party has regardless of consistency"). And, it is well-established that a plaintiff may file a complaint based on an express

11

or implied contract theory and alternatively on a quasi-contract or unjust enrichment theory. *See Western Machine Co. v. Consolidated Uranuim Mines, Inc.*, 247 F.2d 685 (1957); *Thorogood v. Sears, Roebuck & Co.*, 2006 WL 3302640, *5 (N.D. Ill. 2006) (stating that because a party may plead in the alternative, a plaintiff may plead "claims for breach of contract as well as unjust enrichment based in tort"); *AT&T Corp. v. MerchantWired LLC*, 2006 WL 3076671, *7 (S.D. Ind. 2006) (stating that "[e]ven if an express contract exists, a plaintiff is allowed to plead a quantum meruit claim in the alternative in case the express contract is found to be invalid") (citing *Diversified Carting, Inc. v. City of New York*, 423 F. Supp. 2d 85, 97-98 (S.D.N.Y. 2005)). It is only if the unjust enrichment claim incorporates by reference allegations of the existence of a contract between the parties, that a court will dismiss the unjust enrichment claim. *Thorogood*, 2006 WL 3302640 at *5.

Here, the plaintiff's unjust enrichment claim does not incorporate by reference its allegations regarding the existence of a contract. Instead, the complaint specifically alleges that with respect to the plaintiff's unjust enrichment claim, "NC Holdings is not alleging the existence or breach of an express contract." (Compl. ¶ 8.) Furthermore, while the defendants appear to argue that, because there is no question as to the existence or enforceability of the contract, NC Holdings cannot alternatively plead a breach of contract and an unjust enrichment claim, in their reply brief the defendants make an argument that the contract is unenforceable. Indeed, in their reply brief, the defendants argue that, because the alleged contractual breach occurred well over six years ago, the plaintiff's breach of contract claim is time-barred. (Defs' Reply Br. at 2.) Simply put, while a plaintiff cannot recover simultaneously on both a contract and an unjust enrichment theory, such theories can be plead in the alternative. Such being the case, the plaintiff's unjust enrichment claim against EHFI will not be dismissed pursuant to Rule 12(b)(6).

*D. Misrepresentation Claim against all Defendants*

The defendants argue that the plaintiff's misrepresentation claim against all of the defendants should be dismissed because it fails to satisfy the heightened pleading standard for fraud. Specifically, the defendants argue that the plaintiff's misrepresentation claim must be dismissed because it vaguely attributes the alleged misrepresentations to the "defendants" and fails to specify which defendant was involved with which alleged misrepresentation. (Defs.' Br. at 6.) In response, the plaintiff argues that the particularity requirements of Rule 9(b) should be relaxed in this case because the plaintiff lacks access to all of the facts necessary to detail its claim. (Pl.'s Br. at 12.)

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This rule imposes a "more stringent pleading requirement[] upon complaints charging fraud than on complaints charging other types of misconduct.'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, --- F.3d ----, 2007 WL 102985, *6 (7th Cir. 2007) (internal quotations omitted). The purposes of Rule 9(b) are to (1) protect the defendant's reputation from harm, (2) minimize "strike suits" and "fishing expeditions," and (3) provide notice of the claim to the adverse party. *Viacom Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

Furthermore, although full fact-pleading is not required pursuant to Rule 9(b), the plaintiff must state the "circumstances constituting the fraud." Fed. R. Civ. P. 9(b); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). Where the fraud involved is misrepresentation, this means that the plaintiff is required to allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Hefferman v. Bass*, 467 F.3d 596, 601

(7th Cir. 2006) (internal quotations omitted). Indeed, the Seventh Circuit has held that "plaintiffs must plead the circumstances constituting fraud in detail–the 'who, what, when, where, and how.'" *Tricontinental Indus.*, 2007 WL 102985 at *6 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990)).

> Because accusations of fraud can seriously harm a business or reputation, [R]ule 9(b) [ensures] that a plaintiff has some basis for its accusations of fraud before making them, thus discouraging a plaintiff from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). [Rule 9(b)] focuses on identifying the representation of fact itself. Thus, while [R]ule 9(b) does not require a plaintiff to plead facts that would show that the alleged misrepresentations were indeed false, it does require the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.

*Budgetel Inns, Inc. v. Micros Sys., Inc.*, 8 F. Supp. 2d 1137, 1149-50 (E.D. Wis. 1998). Moreover, "'Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to defendants.'" *Id.* at 1150 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, NC Holdings sets forth its misrepresentation claim in paragraphs forty (41) to forty-five (45) of its complaint:

> 41. NovaCare [sic] Holdings repeats and makes a part hereof the allegations contained in paragraphs 1 through 40 above.
>
> 42. The Extendicare Defendants misrepresented to NovaCare that they would pursue the Prudent Buyer Actions and remit to NovaCare the monies recouped.
>
> 43. The Extendicare Defendants did not intend to pursue the Prudent Buyer Actions and misled NovaCare into paying for legal representation for the Prudent Buyer Actions so that the Extendicare Defendants could achieve a settlement of non-related claims.
>
> 44. NovaCare justifiably relied on the Extendicare Defendants' representations.

> 45. As a result of the Extendicare Defendants' material misrepresentations, NC Holdings has been damaged.

(Compl. ¶¶ 41-45.)

Simply put, the plaintiff has not pled its misrepresentation claim with the particularity required by Rule 9(b). To be sure, the plaintiff has set forth the content of the alleged misrepresentation: that the Extendicare defendants would pursue the Prudent Buyer Actions and remit to NovaCare the monies recouped. (Compl. ¶ 42.) However, the plaintiff has not set forth the "identity of the person making the alleged misrepresentation, the time [and] place . . . of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *Hefferman*, 467 F.3d at 601. And, because the plaintiff has lumped all of the defendants together, the plaintiff's allegations give no indication as to which defendant, let alone which individual *person*, made each of the alleged misrepresentations. *See Budgetel Inns*, 8 F. Supp. 2d at 1150.

As previously stated, the plaintiff argues that the particularity requirements of Rule 9(b) should be relaxed in this case due to certain information being outside of its control. More precisely, the plaintiff argues that because the Extendicare defendants excluded NovaCare from their negotiations with UGS, NC Holdings does not know which specific defendant performed which specific act, or when all acts occurred. (Pl.'s Br. at 13.) In support of this argument, the plaintiff relies upon *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041 (7th Cir. 1998). In *Corley*, the Seventh Circuit held that "the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Id.* at 1051. The court held that relaxation of Rule 9(b) is particularly necessary when the plaintiff is alleging fraud against a third party. *Id.*

15

Given the allegations pled in support of NC Holdings' misrepresentation claim, I am not persuaded that this action qualifies for relaxed treatment under Rule 9(b). This is because NC Holdings asserts that the allegedly fraudulent statements were made by one or more of the defendants *to NovaCare*. (Compl. ¶ 42.) And, according to the complaint, NC Holdings is NovaCare's successor-in-interest, that is, NC Holdings has assumed the rights of NovaCare. Thus, the allegedly fraudulent statements were made to NovaCare (now NC Holdings), or more precisely, to one or more of NovaCare's (now NC Holdings's) employees. As such, NC Holdings is not alleging fraud against a third party, but rather it is alleging fraud against itself. Such being the case, I cannot say that certain information regarding the specifics of the alleged misrepresentation are outside of NC Holdings's control.

To reiterate, NC Holdings also argues that because the defendants excluded NovaCare from their negotiations with UGS, NC Holdings does not know "which specific [d]efendant[] performed [which] specific act[], or when all acts occurred," and thus, this case warrants a relaxation of the particularity requirements of Rule 9(b). (Pl.'s Br. at 13.) This argument, however, cannot carry the day. This is because, given the allegations set forth in support of NC Holdings' misrepresentation claim, that is, that one or more of the defendants made allegedly fraudulent statements to NovaCare, what each defendant did or said during the defendants' alleged negotiations with UGS is not relevant at this stage of the proceeding. To be sure, NC Holdings may need to explore during discovery what each particular defendant did or said during the defendants' alleged negotiations with UGS. However, at the pleading stage, all the plaintiff needs to do is set forth the "circumstances," that is, the "who, what, when, where, and how," of the allegedly fraudulent statements that one or more of the defendants made *to NovaCare*. Here, NC Holdings has not set forth the "circumstances

16

constituting the fraud" with "particularity," and consequently, the defendants' motion to dismiss the plaintiff's misrepresentation claim against all of the defendants will be granted. The plaintiff's misrepresentation claim against all of the defendants will be dismissed.

There is one final matter to address, and that is the defendants' request, made in the alternative, for a more definite statement pursuant to Rule 12(e). Although the defendants complain generally about the ambiguity of the plaintiff's complaint in their motion papers, they never specifically "point out the defects complained of and the details desired." Fed.R.Civ.P. 12(e). That is not to say that the plaintiff's complaint does not contain errors. It does. *See supra* note 1. Be that as it may, I am not persuaded that the remaining claims are so vague that the defendants cannot reasonably respond to them. Such being the case, the defendants' request for a more definite statement will be denied.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion to dismiss be and hereby is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that the plaintiff's misrepresentation claim against United Rehabilitation Services, Inc., Extendicare Health Services, Inc., and Extendicare Health Facilities, Inc. be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the defendants' motion for a more definite statement be and hereby is **DENIED**.

**SO ORDERED** this 16th day of February 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

17